## McClure v. Pike Township Supervisors.

*Public officers—Supervisors—Accounts—Surcharge—Order to pay—Use of supervisor's teams—Employment of supervisor's son—Act of July 14, 1917.*

1. The law does not require that an order to pay drawn by supervisors shall set forth what the order was drawn for.

2. A supervisor who gives away even a small quantity of gasoline belonging to the public will be surcharged for the same, though he has the cost of the same deducted from his own account.

3. Where a supervisor's son, under age, is employed on road work, the supervisors cannot be surcharged for wages paid to him where it appears that the minor actually received the wages and was practically emancipated by his father.

4. Under the Act of July 14, 1917, P. L. 840, a supervisor may perform manual labor or act as superintendent or road-master in work on a public road and receive pay for the same, but he cannot be paid for the use of his own teams in such work.

Appeal from auditors' settlement. C. P. Clearfield Co., Dec. T., 1924, No. 94.

*Kramer & Kramer,* for appellant.

*Boulton, Forsyth & Bell,* for township supervisors.

CHASE, P. J., Aug. 21, 1925.—This action comes before the court on an appeal from the auditors' settlement with the Supervisors of Pike Township for the year 1923 and seeks to surcharge the supervisors with certain expenditures and for alleged misappropriation of property by one of the supervisors. At the time of the taking of testimony, all the various contentions of the appellant were abandoned because they could not be sustained either in fact or law, excepting three items, the facts surrounding the same not being in dispute.

The facts which have application to all the exceptions and which should be stated in fairness to the parties litigant are, in substance, that the evidence clearly showed that there was no attempt on the part of the supervisors or auditors to do otherwise than conscientiously and honestly perform the duty of their offices in the most efficient manner possible for the benefit of the public, and what was done was performed with the idea of rendering satisfactory service to the public and performance of the duties of office, excepting in the item concerning the giving away of gasoline. There is nothing in the testimony, nor do we understand that after the facts were brought to light, that there is any feeling or suspicion other than that what the supervisors did was what they thought was the proper thing to do under the circumstances, and in treating the issues before the court they will be treated solely from the viewpoint that the supervisors were acting in good faith, actuated solely by the motive to render service to the public in the performance of their duty.

The issues in controversy are as follows:

First. That the supervisors should be surcharged the sum of $35.50 paid to A. O. Bilger because the order drawn for the same does not state what it was for. The law does not require that an order of the supervisors set forth what the order was drawn for. Section 236 of the Act July 14, 1917, par. 4, P. L. 840, provides that supervisors, road-masters and superintendents shall keep records, giving names of all persons employed, dates on which work was done, nature and location of same, with compensation paid, etc. Sections 285 and 287 of the same act provides the duty of the township treasurer as to payment out of money upon order of supervisors. There is nothing in the act of assembly requiring that an order set out or state for what it is drawn. In view of the requirements of the law as to the superintendents, foremen and supervisors keeping records, this would be a needless requirement. This objection cannot be sustained. It is proper to state that the testimony shows that Mr.

A. O. Bilger performed the work on the road and was entitled to the sum received, which fact was never disputed.

The second exception involves these facts: Mr. Anderson, one of the supervisors, had in his keeping a quantity of gasoline belonging to the township, which was used in the road machinery of the township; that on three or four different occasions Mr. Anderson gave gasoline to two different parties, all told, about ten gallons of this gasoline; that he made no charge for this gasoline, so he testifies, and had the costs of the same deducted by the township treasurer from his account. As to these deductions the township treasurer corroborates Mr. Anderson. The amount involved in this exception is insignificant and it may seem that this exception is trifling, especially in view of the fact no dishonesty is imputed to Mr. Anderson; but when we consider that this was trust property belonging to the public, that the public had no way to determine for a certainty what were the actual facts involved except by legal action, when we consider that the permitting of the using of public property in this manner throws open the doors to the misappropriation of public property and would invite and encourage corruption in office, this conduct cannot be too severely criticised and is frowned upon by the law and is not permitted, as we view the decisions. It is not a question of honesty or dishonesty in the act committed; it is a question of public policy, and when property belonging to the public is diverted from the use intended and for the purposes for which the public has placed it in the hands of the custodian, it is a violation of the law. The acts are drawn with not only the idea of punishment for corruption, but as far as possible to remove temptation of public plunder, and although the testimony in this case clearly indicated that Mr. Anderson paid for the gas out of his own funds, nevertheless, under the law, the court will be constrained to hold him responsible to the extent of justifying this appeal on the part of the appellant.

The third exception to the auditors' report arises out of these facts. In the latter part of May or early June the defendants, as supervisors, were notified if a certain road under their jurisdiction, called the Bloom Road, was not repaired and put in shape for travel, an action would be brought against them. This notice came from a justice of the peace and also the District Attorney of Clearfield County. As we understand it, this particular road was under the supervision of Supervisor Anderson. Mr. Anderson made effort to secure teams and help to have this work done and, as we gather from the testimony, made considerable effort to secure help, and being unable to secure the help, went to two of the township auditors, Mr. Straw and Mr. Otter, and also consulted the other supervisors, stating to them the circumstances, whereupon the auditors and Mr. Anderson came to the conclusion that Mr. Anderson should employ his son, a minor of the age of 13 or 14 years, and that Mr. Anderson should furnish a horse and wagon; that for the boy, horse and wagon compensation should be paid at the rate of $4 per day; the prevailing wages for this kind of work in the township was for a man $3 per day and team $4 per day, or total of $7. That Mr. Anderson's boy, horse and wagon was used on the Bloom Road in June and July sufficient to earn $92.75 under the wage agreed upon by the auditors. That subsequently the boy and horse and wagon were used on other roads and that the same pay for this work, there being no dispute but what the work was done, amounted to $198.75. However, there is no testimony to show that other men and teams could not have been secured for this latter work or that a reasonable effort was made to secure the same. The wages paid to Anderson may fairly be divided as follows: On the Bloom Road work to Blair Anderson $70.10, compensation

for horse and wagon $55.65, other road work done subsequently to July work of Blair Anderson $42.40, compensation for horse and wagon $63.60. All the testimony on the subject indicates that Blair Anderson received his wages for his own use and was practically emancipated. Under this exception two questions are raised: (a) Whether the hiring of the boy was legal under the law; (b) whether the employment of the horse and wagon of Supervisor Anderson was legal.

As to the first proposition, under the evidence in this case, even though due to the age of the boy, there would be a presumption that the father received the wages or some benefit from the boy's work, nevertheless, under the evidence, it could not be held otherwise than that the boy personally received the compensation for his work and that the father received no benefits whatever from the same, either directly or indirectly, he testifying he gave the boy what he made. Therefore, we cannot, under the circumstances, surcharge the supervisors for the money paid to the boy for his work; even if the father had received the wages of the boy, it is questionable whether or not the hiring of the boy was illegal under the acts as to supervisor's employment. It is unnecessary, as we view the facts in this case, to pass upon that issue. See Funk v. Washington Twp., 13 Pa. C. C. Reps. 385; Mitchell v. Berlin Twp., 28 Dist. R. 903.

As to the second proposition, the learned counsel for the defendant with great force contends that the employment of this horse and wagon is permissible by virtue of the Act of July 14, 1917, § 239, P. L. 840. Prior to this act, it would not have been seriously contended that this employing of the defendant's horse and wagon was legal. In reading the opinions of the various courts, one is struck with the unanimity of the courts in holding that the 66th section of the Act of March 31, 1860, P. L. 400, which has application to this issue involved, together with the Act of June 23, 1897, P. L. 194, is salutary legislation and brought about because of public policy. In discussing the subject of a supervisor employing his own team, Woodward, J., in Coxe's Case, 11 Pa. C. C. Reps. 639, says: "We are not unmindful, however, of the abuses to which such a custom would naturally lead if it should receive judicial sanction and become the usual practice." This recent case is a demonstration of the wisdom of the statement of Judge Woodward. There may have been an emergency in June and July in Pike Township which would have required the use of Anderson's horse and wagon, but there is nothing in this case to indicate that the work done subsequently in which the horse and wagon was used was the result of an emergency. Judge Woodward then, in deciding the Act of March 31, 1860, P. L. 400, applies to supervisors, clearly indicates why the same should have application. Again, the same judge, in the case of In re Hazle Twp., 1 Dist. R. 813, in speaking of the purpose of the Act of March 31, 1860, § 66, P. L. 400, in its application to public offices, says: "Public plunder by men in office was the thing aimed at. To remedy this the office-holder was to be prohibited from having any personal interest in the furnishing of supplies or materials for public use. It did not contemplate actual dishonesty merely; it was intended to prevent the subjection of public servants to temptations, which experience had shown to be irresistible."

All the cases we have examined which deal with the subject use equally strong language. It has been declared in this district, as well as others, that team hire falls within the term "supplies:" In re Hazle Twp., 1 Dist. R. 813; Com. v. McCoy, 4 D. & C. 539.

Keeping in mind the decisions of the courts and what they have said as to the legislation involved, which it is not unreasonable to assume the law-makers

were acquainted with, what construction must be given to the Act of July 14, 1917, § 239, P. L. 840? Comparing this section with section 17 of the Act of June 23, 1897, P. L. 194, it is found that the prohibition which made it unlawful for supervisors to be interested, either directly or indirectly, in any work done, was removed by the Act of 1917 by leaving out the clause "any work done." As to the effect this change had in the law, section 235 sheds light, by providing that the compensation of the supervisors must be fixed by the auditors when overseeing or working on the roads. The last clause of section 234 provides expressly that the remaining sections shall not prohibit the township supervisors from overseeing and working on the roads themselves. With the interpretation by the courts prior to this act that furnishing a horse and wagon was a furnishing of supplies and not work, and the language of section 235 and part of 234, we feel that the only construction that the Act of 1917 will bear is that the disability removed is limited to permitting a supervisor to perform manual labor or act as superintendent or road-master on the roads; that it does not extend to the using of his equipment on the roads. If the law-makers intended to give that right, they surely, in the teeth of the court decisions, would have so indicated by use of appropriate language in the act.

In determining what interpretation the word "work" should have and thereby the effect to be given the Act of 1917 under this issue, we are compelled to give the definition that the law has placed upon the word prior to the act, and, as has already been said, the interpretation that was in the books at the time of the passage of the Act of 1917 excluded the use of the property of a supervisor on road work, the law holding that the furnishing of a team and wagon by a supervisor was not labor furnished, but supplies and material. It is urged that the horse and wagon of the supervisor was placed on the road as the result of an emergency because of inability to secure help. As we have said, the evidence indicates that the supervisor, Anderson, made reasonable effort to secure teams in his district to do the work on the Bloom Road and only placed his horse and wagon on the road after consultation with the auditors and other supervisors. This all goes to show, and does show, the good faith and honesty of purpose of Anderson as to placing his horse and wagon on the Bloom Road. We cannot go so far in the statement of the use of the horse and wagon outside of the Bloom work. However, the law prohibits what was done; it does not make an exception to the rule. If it is intended that, under certain circumstances, the law should not have application, it would have said so, especially in view of what the courts for almost a half-century have said as to the necessity and purpose of the legislation under discussion. The strictness of the law may work a hardship in some instances, and this may be one of them, but the evils sought to be prevented by the law may be of such a nature and such a degree of importance to the public welfare that the policy of the law would not permit exceptions to exist, and this is one of the cases. The supervisors under the law are chargeable for moneys paid out under this item. The law is rightfullly very strict in these matters, and the language of the various courts indicates that conditions at one time were such in the Commonwealth that legislation was necessary to protect the public from looting and grafting. In this case, however, the supervisors need feel no humiliation, because the evidence demonstrates their honesty and good faith and desire to perform the burden of their office, and it may have been this honest effort on their part to perform their duties in keeping the roads in fairly travelable shape that brought about this present situation.

McClure v. Pike Township Supervisors.

Now, Aug. 19, 1925, the Supervisors of Pike Township, namely, G. W. Anderson, John H. Bloom and A. L. McKee, are surcharged the sum of $119.25, payments made to G. W. Anderson, supervisor, for compensation for horse and wagon belonging to said G. W. Anderson used on the public roads of Pike Township during the year 1923.

It is further ordered and decreed that judgment be entered against said supervisors and in favor of the Road District of Pike Township, with costs of this proceeding.

From John M. Urey, Clearfield, Pa.